Thank you. Good morning, Your Honors. May it please the Court. My name is Catherine Hart, and I am representing Sean Harrington. Earlier this week, I received, as did my opposing counsel, an order from the Court that says that oral argument be prepared to discuss the effect of Roberts v. Maine and Missouri v. McNeely. Thank you very much. Those cases do concentrate the mind wonderfully. The Roberts case, which had to do with Maine's implied consent law, imposed a mandatory two-day incarceration upon any individual who was arrested for driving under the influence and who was later convicted was to receive a mandatory two days in jail. Now, the way I analyzed that Maine statute is that there was a driving under the influence statute, and the refusal was like an enhancement, like an enhancement of a two-day penalty, as well as it was an aggravating factor. Now, in the Maine case, the first district found that it was a violation of due process for that mandatory period of incarceration not to be communicated to Mr. Roberts when he was arrested for driving under the influence. That case is basically on all fours with the Harrington case because Harrington was not advised at the time that he was arrested for driving under the influence. He was not advised under Federal law. It's a little different from that, but it's also not in any way that affects the comparison to your case. But the Court didn't say that you have to advise him. They said you can't misadvise him and then not allow him to call a lawyer. I think that's a little narrower holding than to say he has to be advised. Well, in Maine, that's correct. There was a misadvice, but under the statute, there was a misadvice. Kennedy, they relied also on the refusal to allow him to call a lawyer. It says at the end, due process may not require a warning of the consequence of refusing to take a blood alcohol test, and it may not require a full right to counsel for suspects facing the decision whether or not to submit to testing. But under the circumstance of this case, it's a matter of fair play and decency, which I never knew was a part of the requirements of the law. But it seems in Maine it is, that as a matter of fair play and decency, due process does require that he be given a reasonable opportunity to call his attorney before deciding on whether to be tested. So I want to go back to what happened here. In this case, as I understand it, the arresting officers gave your client, in effect, the California warning. Exactly. The California warning was given, in fact, three times as read, the California warning. It was an accurate recitation of California law. Absolutely it was. Okay. By the way, was your client subject to California penalties if he was convicted of drunk driving, would he lose his license? I mean, I take it the U.S. Government can't take away his license. So were California penalties at least something your client faced? Yes, that's why the California admonition was read, so that the administrative suspension of the license and then the So, but I understand that. So let me just, you have limited time and we do, too, so let me just walk through this. What he wasn't told was that there was a consequence of refusing to, in California, the consequence of refusing to consent is twofold. One is that your license will be suspended, and second, that if you're eventually convicted, there may be some enhancement to the sentence. That's absolutely correct. Okay. In the event of conviction. In the event of conviction. On Federal land, there's an additional consequence, which is if there was probable cause to stop you, you may be punished independently for failing to accede to the blood test. Is that correct? That's correct, but I don't see it just as an additional consequence. I see it as an additional. I think additional consequence helps you, so you don't need to talk me out of it. Oh. The, my question is what is that additional consequence? Well, the additional consequence here is a separate penal statute of six months in custody and or a $5,000 fine. And that is for simply refusing, regardless of whether there is an eventual conviction. So your case is that if your client should have been told, in addition to the California consequences, that failure to submit to the test would have given him jeopardy of an additional jail sentence, over and above any sentence that he might have received for the underlying crimes. That's correct, plus a separate conviction on his record. Okay. Because it wasn't just an enhancement or some additional penalty. It's a separate Code of Federal Regulations 4.23c. Right, right. Now, your brief makes an entrapment argument. Are you making any other arguments here other than entrapment? Yes. The entrapment argument is a due process argument. But in light of the Roberts case, it certainly should be expanded to be a due process argument that is beyond simply the entrapment. And the due process argument here is that. Harrington is on Federal land, on Federal soil. This is like, I don't want to be facetious, but, Dorothy, you're not in Kansas anymore. This is a separate jurisdiction with separate laws. And nowhere was he told on Federal land, it is a violation of Federal law for you to refuse a chemical test, and your refusal will subject you to up to six months in custody and or a $5,000 fine. No, my question is, I want to know what arguments you actually made to the, you know, to the district judge and to us. Your brief seems to make only an entrapment by estoppel or estoppel by entrapment argument, but you're trying to expand it now, and I understand why. Did you ever say to the district judge, there's a problem here because my client was denied access to counsel? I did not. My argument to the district court judge, which I think was maybe close to the due process argument, there were two arguments to the district court judge. One was the entrapment argument, and the other was the confusion, officer-induced confusion over the mixture, the kind of conjury of California law mixed with Federal law. And the district court judge said that was a creature of California law, not a creature of Federal law. On hindsight, it could have been better framed and better crafted as a due process argument, because I think that's what I was attempting to do when I argued that. Your entrapment argument was essentially by not telling your client everything, he made the decision to forego the breath test, but if he'd only known that he might have gone to jail, too, he would have taken it. Well, yes, and both the magistrate judge, Judge Sang, and the district court judge, Judge Ishii, did have trouble with the fact that Mr. Harrington was not advised about Federal law. They both had trouble with that, and then ultimately decided that there was not justifiable reliance, and Judge Ishii said that the magistrate judge should not have imposed a subjective test on that. The magistrate judge saying, well, I don't think that Harrington would ever have taken any kind of test, and I don't think the reliance there was significant. But the point in light of the Roberts case is that even though Harrington was disputatious, argumentative, and presented, well, maybe an obstreperous problem to the jailers, so did Roberts in Roberts v. Maine, and the Court there said that Roberts' behavior was irrelevant. The argumentativeness and the use of obscenities was irrelevant to the due process requirement that he be correctly advised. So my argument here is that the Federal statute was not disclosed at all to Harrington, and that if Harrington had been told this is a separate violation of law, refusal is separate under Federal law, you are subject to 6 months in custody, that there would have been a different story and that it's a due process argument. Do you have to prove the second part? Because on that part, it seems to me the judge below said, oh, come on. Or is it enough that you only have the first part? You have to show that your client would have taken the test had he been told the last thing, or is it just enough that he wasn't told it? Under the entrapment by estoppel argument. Yeah, I know. Forget that argument. You never should have made it. But under the argument you're now making, do you have to prove the second thing or is it enough that your client wasn't told? No. Under the due process argument, you look at what was fundamentally fair, what was confusing there, should the defendant have been advised about the effect of Federal law. And clearly, being on Federal land with a whole Federal different jurisdiction and different laws. Are you also arguing that he was denied the right to talk to counsel after he was not given an accurate report about the? Yes, because under the same theory of Roberts, if there is that type of confusion and misadvice, then a right to counsel would have been reasonable. I'm not saying that this is not reasonable. But I thought you told me that you never raised a right to counsel argument to the magistrate or the district judge. I didn't raise the – I did not raise a Sixth Amendment right to counsel. I raised the fact that he had asked for counsel as a reasonable request in light of the confusion engendered by the misadvice. I didn't say that at that point he had a Sixth Amendment right to counsel because official charges hadn't been filed. I said that that was part and parcel of his confusion and it was a reasonable request. And I know we're rewriting your brief for you, but in your brief, did you make a right to counsel to this Court? Did you make any argument that one of the problems? No. Okay. No. By right to counsel, I think I want to make sure we're talking about the same thing. You don't make right to counsel as a legal Sixth Amendment argument, as you say, but as part of your due process argument. Correct. In the Roberts case, they did not find that a right to counsel under Sixth Amendment had attached. What the Roberts case held was that in light of the confusion and the misadvice, that a request for counsel to attempt to clarify it would have been reasonable. So I'm not saying there's a Sixth Amendment right to counsel. The client must have read Roberts, because he said, I want to speak to my attorney. You read me something off a piece of paper. I'm not sure you're really competent to advise me of my rights as to whether or not I need an attorney. I'm still a U.S. citizen. I deserve an attorney. He was setting up the brief. That's correct. And one of the officers did advise him that Miranda applied. And for the reason also that an officer told him that Miranda applied, then his request for an attorney was a logical request. All right. Thank you. Okay. May it please the Court. My name is Megan Richards, and I represent the United States. Since we've entirely restructured the argument on the other side, and this is a little unfair to you, but let me restructure it again and see if you can respond to it. Mr. Harrington got a warning. He was not told, however, that there was an additional penal consequence for failing to consent to the test, which is that he would be convicted under Federal law of a misdemeanor if the trial went the wrong way. Why isn't that warning insufficient? Recognizing that that may not have been the argument that was made in the brief, but we're here to try to do some justice, why isn't that argument insufficient? The argument was not insufficient, because the argument did not. The warning, I'm sorry. The warning insufficient. Right. The admonition told the admonition given to the defendant told him that there was a possibility of fine and imprisonment if he refused. And it was unlike the admonition in Roberts v. Maine, because the admonition in Roberts v. Maine told the defendant, and I'm paraphrasing, that these things will happen to you if you refuse. And then had the person signed, I've been told all the things that would happen to me, and I refuse. Okay. So let's go on to parse your argument here. So what you're saying is Mr. Harrington was told one of the consequences of failure to refuse would be imprisonment and fine. Yes. Wasn't he told, though, that that would only occur if he was convicted of the underlying offense? The admonition did imply that in California. Right. Which is the law in California. But on Federal land, one can be acquitted of the underlying offense and still charged with refusal to submit if there was reasonable cause to ask the person to submit. Is that a correct statement of law? That's correct. And this is more of a failure to warn case. Right. Or it's like United States v. Neville, which is discussed in the Roberts opinion. In that case, the defendant was not told of all of the consequences. That defendant was not told that refusal could be used against him in a prosecution for DUI. I see this as the government sees this as similar. Then you can be sent to prison or jail? Well, here. It will be used against you in a trial? I think it's similar in that it goes to the burden that the government has in proving a conviction. And I also think it's important here that there was no mandatory minimum. So while the defendant was subjected to, if he was convicted of refusal, and he was, he could be fined up to $5,000 and he could be subjected to a 6-month jail sentence. But those were the maximums. There was no mandatory minimum. So the difference is what the minimum was. He actually got him in prison or incarcerated for two days. He did. His attorney was able to go to sentencing and make an argument that he shouldn't be subjected to fine and imprisonment. And that was not the case in Roberts v. Maine. And the defendant here, when he was sentenced, it wasn't just for this refusal. It was for three other crimes. And the judge said that. I was going to ask you about that, and I'm not certain I can tell it from the record. Was there – what was the sentence for this crime? The judge – well, the sentencing transcript's not – it is in the record. It's not in the supplemental excerpts. But if you review it, the judge does not break down the sentence by offense. He got 120 days. That's what I – that was my impression, that the judge said, you've committed all these misdemeanors because he pleaded guilty to some of them. That's correct. And he had two previous DUIs in his history, and the judge thought that he was gaming the system. And I think that's the reason for the longer sentence. It wasn't like in Roberts v. Maine where a person refuses, and then from then on it's almost a foregone conclusion that they're going to jail. So your distinction of Roberts is that the refusal in Roberts led to the consequence, inevitably, which was that the license – The judge had no discretion. The license was suspended. Right. Well, and the two-day mandatory minimum. The judge, no matter what the attorney for the defendant said at a later point, no matter the reason for the refusal, the judge – Okay. But here – but here there's a criminal consequence for failing to submit. You – sure, you get a trial on it, and you may get to argue that the sentence shouldn't be as long as – or that there ought not to be a sentence, but a criminal conviction ensues. So I'm not sure why that's different in Roberts. I think it's a lesser liberty interest when it's a B misdemeanor and you can go to trial – I mean, you can go to a sentencing hearing and your attorney can argue for no punishment. But isn't it a greater liberty interest in the sense that in Roberts the defendant was exposed to two days in jail, as I recall, and in your case the defendant is exposed to the possibility, didn't get it, of up to six months in jail? There is a greater possibility. However, it's unclear what the maximum the defendant could be exposed to in the Roberts case, so it's hard to make the comparison here. But I agree. There was a – the possible exposure was greater, although I would note that in – in the national parks, a parking ticket is also a B misdemeanor. So it's not a – it's not a foregone conclusion that somebody is going to suffer a prison sentence in such a case. So if we're – if we're busy rephrasing arguments today, and we did a lot of it for your opponent, I – I take it your argument is, look, he was told that if he failed to submit, among the consequences – among the possible consequences would be jail and – and a fine. Yes. We didn't – we didn't have the right law when we told them that, because there was another law that imposed them. But – but we told them of the consequences, and that was – that was enough? Yes. Okay. So tell me why – expand that argument for me. Okay. This case is similar to Neville in that the defendant was given so many of the consequences that he would know that failing to submit was not a safe harbor, that this was serious, that he was not permitted to refuse. The – the Rangers told him at least three times that he had to submit. It wasn't a case where anybody from the government was trying to trick him into refusing so that they could slap on a misdemeanor charge. He was told of serious consequences, and he – You know, the – that might be a better argument, as far as I'm concerned. If he hadn't said repeatedly, you know, I don't know what this all means. I don't – he says, right now I want to speak to an attorney. I don't know what I'm up against. I don't know who you are. I have no idea what's going on right now. I have no legal advice. I need to speak to an attorney. I don't know how to answer these questions. I'm inept to answer these questions. And he's got – he keeps saying that repeatedly, I want to speak to an attorney. And now he's saying, well, we told him that some things might happen. We didn't tell him that just as a consequence of this, he could be convicted of a crime, he could be sent to jail for up to six months. And he says, I don't know what you're telling me. All I want to do is talk to an attorney. You know, it's just – if the question is what's fair and decent, which the main court said, I don't think he even knew what happened – I don't mean as an individual. But would have any problem saying it's not really fair and decent to send somebody to jail for six months, as you could have done. And all he wants to keep saying, you know, can't I find out what everything's involved? Can't I call my lawyer? I don't know why anybody would not want to let him call a lawyer, who might say, listen, stop all this nonsense. You know, just take the damn test. His lawyer might have told him that. You wouldn't be up in the Court of Appeals with all of us going through all of this if they'd let him make a phone call. I just don't understand why the government's so insistent that someone shouldn't be allowed to make a phone call. Now, that's just – since we're all saying what we really think and making up the arguments, there's one for you, for me. Well, there is no Sixth Amendment right to counsel here. I don't know why the Rangers didn't – I said applying the main test of what's fair and decent. Right. As he keeps saying, you know, I'm an American citizen. I don't know what that means anymore. But it seems to me that it certainly meets the fair and decent test that you tell somebody – the guy's probably drunk. He doesn't know anyway. He says, I don't know who you are, what you're telling me. I don't understand it. But maybe if you let him call his lawyer, we wouldn't all be here today. All right. But that's your line. That's not a question. Don't let me discourage you, because you're only 11 seconds over. Okay. Well, I'll wrap up. If this Court is considering issuing an opinion on the factors that are in the First Circuit case, the government would ask for a supplemental briefing, since this case was just brought to the attention of the parties and was not argued below. Well, that would be fair and decent if we did that for you. Thank you, Your Honor. Sotomayor, how much time would you want to brief? One month. You want to file – how much time do you need? One month, two weeks. Don't negotiate against yourself. Okay. You're not a tough bargain. And – but it's the government's position that this Court should rule on entrapment by estoppel grounds, which are set forth in the brief. But we won't need a month for that. And so the government would submit on its brief. Thank you. Thank you. Thank you, Your Honor. Your Honor. Did I have any rebuttal time left, or did I use all my time? No, we're doing a pretty good job for you. Okay. Yes, you are. All right. Okay. All right. Thank you. The case is arguably submitted. But we'll give you a couple of days to respond to counsel's brief. All right. Oh, you're going to – you don't want – maybe we – before you leave, I was – we can – we'll issue an order. We'll issue an order with respect to supplemental briefing. Well, I was thinking something. We'll issue an order with respect to supplemental briefing. Okay. Thank you, counsel. The case is arguably submitted. The Court will stand in recess for the week.
judges: Reinhardt, Noonan, Hurwitz